**Harry B. Gill, Esq., (SBN 296730)**
harry.gill@hbglaw.com
**HBG Law, PC**
4317 North Star Way, Suite B
Modesto, CA 95356
Tel.: (209) 285-2100
Fax: (209) 285-2114

**Attorney for Plaintiff**
EAGLE MEADOWS ROAD AND PROPERTY
OWNERS ASSOCIATION

## IN THE UNITED STATED DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EAGLE MEADOWS ROAD AND PROPERTY OWNERS' ASSOCIATION**, <br><br> *Plaintiff,* <br><br> v. <br><br> **UNITED STATED DEPARTMENT OF AGRICULTURE FOREST SERVICE and DOES** 1 through 20, inclusive, <br><br> *Defendant* | CIVIL ACTION NO. <br><br> **COMPLAINT FOR DAMAGES** <br><br><br> [Demand for Jury Trial] |

Plaintiff, EAGLE MEADOWS ROAD AND PROPERTY OWNERS ASSOCIATION (hereinafter referred to as "Plaintiff" or "EMRPOA"), hereby files this Complaint against Defendants, UNITED STATES DEPARTMENT OF AGRICULTURE FOREST SERVICE, a government agency (hereinafter referred to as "Defendant" or "USDAFS"), and DOES 1 through 20, inclusive (hereinafter collectively referred to as "Defendants"), and respectfully shows the Court as follows:

INTRODUCTION

1.      This lawsuit sterns from Defendants' unlawful acts or conduct in failing to provide maintenance funds to repair the National Forest Transportation System Road 5N01 (Eagle Meadow Road) (hereinafter referred to as "Road 5N01").  In order to recover damages sustained as a result of Defendants' negligence and seek proper remedies for Plaintiff's members who have been affected



by Defendants' such acts or conduct, Plaintiff brings this lawsuit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 2671-2680, et seq., 28 U.S.C. 1346, and 28 U.S.C. 1332.

**PARTIES**

2.     Plaintiff EMRPOA is a non-profit association representing over 80 individual private property owners who own over 1000 acres of private property embedded in the Stanislaus National Forest in Tuolumne County, California.

3.     Defendant USDAFS is a federal department that administers the nation's 154 national forests and 20 national grasslands.

4.     The true names and capacities of those Defendants sued in this Complaint as Does 1 to 20 are unknown to Plaintiff.  Plaintiff sues these Defendants by fictitious names under § 474 of the California Code of Civil Procedure.  Plaintiff is informed and believes, and thereon alleges, that each of these fictitiously-named Defendants is legally responsible for the events described in this Complaint and legally caused the injuries and damages suffered by Plaintiff. Plaintiff prays to leave to amend this Complaint when the true names and capacities of the fictitiously-named defendants have been ascertained.

5.     Plaintiff is informed and believes that, at all relevant times, each Defendant, including Defendants identified by fictitious names, was the duly authorized agent, officer, servant, and/or employee of every other Defendant with respect to the actions and events described in this Complaint, acting or omitting to act within the course and scope of such agency, service and/or employment, and pursuant to the consent, permission, authorization, instruction, direction, and/or ratification of each and every other Defendant.

**JURISDICTION AND VENUE**

6.     The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1346(b) and 1367(a).

7.     The venue is proper pursuant to 28 U.S.C. § 139l (e) in that this is an action against the United States of America and agents thereof are located in the County of the Tuolumne and the acts and omissions alleged occurred within the Eastern District of California and Plaintiff maintained

HBG
LAW

its business in the County of Tuolumne.

8.     The amount in controversy is in excess of the minimal jurisdictional limits of this Court.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

9.     On July 25, 2020, Plaintiff presented its claim to the appropriate Federal Agency for administrative settlement under the FTCA pursuant to 28 U.S.C § 2671, et seq.  A copy of the FTCA Form (SF-95) is attached hereto as Exhibit "A" and is fully incorporated herein by reference.

10.     On June 30, 2022, Christopher S. Elmore, Acting Assistant General Counsel for the United States Department of Agriculture, denied Plaintiff's claims and provided a right to sue.  A copy of the denial and a right-to-sue Letter is attached hereto as Exhibit "B" and is fully incorporated herein by reference.

11.     Pursuant to 28 U.S.C § 2401 (b), Plaintiff's Complaint is timely.

**FACTUAL ALLEGATIONS**

12.     On January 5, 2015, USDAFS issued an Authorization Permit (SUM 1585) to EMRPOA to use Road 5N01.  A copy of the Authorization Permit is attached hereto as Exhibit "C" and is fully incorporated herein by reference.

13.     EMRPOA is a non-profit association with voluntary dues-paying members primarily to work with the USDAFS cooperatively to maintain Road 5N01 in exchange for road access to private properties when Road 5N01 is closed to the public.  These properties' primary and only access is via California State Hwy 108 and Road 5N01.

14.     EMRPOA members have spent tens of thousands of their own money (via dues) and countless man-hours (and donated tools and equipment) over the past four decades to maintain Road 5N01.

15.     Each year after the winter snow melts, it is Plaintiff who "opens" the road, cuts down trees, digs out drainage ditches and clogged culverts, and patches the paved section of Road 5N01 in addition to installing erosion products before Road 5N01 is open to the public.

16.     In addition, EMRPOA purchased road base material, rip rap, and other rock and gravel materials for the non-paved sections of Road 5N01 and placed and replaced numerous culverts in



this section.

17. On August 1, 2018, the Donnell Fire started due to an unknown cause near Donnell Reservoir (hereinafter referred to as "Fire"). It spread rapidly up the canyon towards Kennedy Meadows and Eagle Meadows, where Plaintiff's members own property and cabins.

18. The Fire burned 36,450 acres (147.5 km) and destroyed 54 major and 81 minor structures before the Fire burned out on October 1, 2018. The Fire was declared 100% contained on November 28, 2018.

19. Road 5N01 was a major access road to attack the front of the Fire, especially to the south and the area of the Bennett Juniper and Plaintiff's private properties.

20. During the Fire, the road carried extensive traffic of semis carrying dozens of bulldozers and countless water trucks. Trucks meeting on the narrow section of Road 5N01 caused each truck to move off the shoulders, which caused extensive damage to the paved areas and edges of the asphalt. The unpaved area was immediately bladed flat during the Fire to provide better access.

21. This action carried off nearly all of the gravel/road base association members had paid for and placed on their private property easements to prevent dust from off-highway vehicles' extensive use of Road 5N01.

22. In addition, this action destroyed properly placed, functioning drainage, slopes, runoff, crowing, and ditching that maintained the road properly. Several existing culverts were cut/crushed, causing further water damage to Road 5N01.

23. On October 9, 2018, the leadership of EMRPOA met with Summit/MiWok District Ranger Sara LaPlante ("District Ranger"), Greg Cox, USDAFS Road Engineer ("USDAFS Engineer"), and Tuolumne County Supervisor Evan Royce ("County Supervisor").

24. The meeting was held on location at Road 5N01 starting at Hwy 108, with multiple stops along Road 5N01 ending at the private property of Glenn and Bonnie Kolpack in Long Valley.

25. During this meeting, specifically at the end of the paved section at Blaze Ridge USDAFS Engineer stated that he had not been on the road in about two years; however, he said that based on pictures he took at that time, the road was extensively damaged during the Fire suppression

efforts.  A copy of Photographs of the damaged Road 5N01 is attached hereto as Exhibit "D" and is fully incorporated herein by reference.

26.     District Ranger articulated that she had never been on Road 5N01 before that meeting.

27.     District Ranger also said that she did not know what she could do because she had already signed off on the Burned Area Emergency Response/Rehabilitation ("BAER") plan and that it was too late to obtain funding for repair to the road.

28.     On October 26, 2018, the leadership of EMRPOA, at Plaintiff's request, met with US Congressman McClintock, his chief of staff Rocky Deal, Barnie Gyant Deputy Regional Forester USDA Forest Service Region 5, Tuolumne County Supervisors Sherry Brennan and Randy Hanvelt.

29.     During this meeting, the damage to Road 5N01 was articulated, along with other concerns surrounding the Fire.

30.     On January 10, 2019, Eagle Meadow Road Rehabilitation Proposal was obtained from George Reed, Inc. (Bid No. 18-332) to repair Road 5N01.  George Reed, Inc. provided an estimated cost of $1,310,328.00 to repair Road 5N01.  A copy of the Proposal is attached hereto as Exhibit "E" and is fully incorporated herein by reference.

31.     As a direct and proximate result of the Defendants' negligence, Plaintiff and its members suffered damages in an amount to be determined at trial, which includes but is not limited to $1,310,328.00, the repair cost of Road 5N01.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Negligence – Property Damage)**
**Against All Defendants**

32.     Plaintiff repeats, realleges, and incorporates by reference the paragraphs 1–31 with the same force and effect as though fully set forth herein.

33.     Congress has authorized the Secretary of the Department of Agriculture to acquire, build and maintain a road system in national forests.

34.     Under 28 U.S.C. § 2674, The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual

under like circumstances but shall not be liable for interest prior to judgment or for punitive damages.

35.     Plaintiff is informed and believes and, upon such information and belief, alleges that Defendants owned, maintained, serviced, repaired, controlled, investigated, and/or managed the subject bulldozers and countless water trucks used during the Fire incident that occurred on August 1, 2018.

36.     Plaintiff is informed and believes and, upon such information and belief, alleges that Defendants were negligent in their ownership, maintenance, service, repair, control, operation and/or management during the Fire incident when dozens of bulldozers and countless water trucks meeting on the narrow section of Road 5N01 caused each other to move off the shoulders, which caused extensive damage to the paved areas and edges of the asphalt.

37.     After the Fire, when Defendant USDAFS took measures to secure Road 5N01, it simultaneously caused damage to the paved and unpaved sections of Road 5N01.

38.     Plaintiff is informed and believes and, upon such information and belief, alleges that Defendant USDAFS, without the inspection of Road 5N01, had negligently signed the BAER/Rehabilitation Plan.

39.     Defendants' negligent acts or conduct caused a struggle for Plaintiff to seek the repair amount for Road 5N01.

40.     As a direct and proximate result of the negligence of USDAFS, Plaintiff sustained and incurred property damages to Road 5N01 in an amount to be determined at trial, which includes but is not limited to the repairing cost of $1,310,328.00.

**DEMAND FOR JURY TRIAL**

41.     Plaintiff, EMRPOA, hereby demands a trial by jury in this action.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff EAGLE MEADOWS ROAD AND PROPERTY OWNERS ASSOCIATION prays for judgment against the UNITED STATES DEPARTMENT OF AGRICULTURE FOREST SERVICE and DOES 1 through 20 as set forth below.

i.     For restitution in an amount equal to the actual price paid or payable by Plaintiff,

1   according to proof at trial;

2       ii.   Repairing cost of Road 5N01, i.e., One Million Three Hundred Ten Thousand Three

3   Hundred Twenty-Eight Dollars ($1,310,328.00);

4       iii.   For compensatory damages according to proof at trial;

5       iv.   For attorney's fees and costs of suit herein;

6       v.   For such other and further relief as the Court deems just and proper.

7                             Respectfully submitted,

8   Dated:  December 30, 2022



10                          HARRY B. GILL, ESQ.

11                          Attorneys for Plaintiff
                        EAGLE MEADOWS ROADS AND PROPERTY

12                          OWNERS' ASSOCIATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit "A"**

**(FTCA Claim Form SF - 95)**

# CLAIM FOR DAMAGE, INJURY, OR DEATH

**INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED
OMB NO. 1105-0008

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| USDA Forest Service<br>Albuquerque Service Center<br>ATTN: Claims<br>101B Sun Avenue NE, Albuquerque, NM 87109 | Eagle Meadows Road and Property Owners Association<br>P.O. Box 1181<br>Soulsbyville, CA 95372 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY   ☐ CIVILIAN | N/A | N/A | 8/1/18-11/28/21 | |

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See Attached Letter Dated 7/25/20

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED.
(See instructions on reverse side).

Stanislaus National Forest Road 5N01 extending from California State HWY 108 terminating at Relief Reservoir which is approximately 16.5 miles of paved and non-paved road.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) | |
| Glenn and Bonnie Kolpack | 20159 Hwy 108, #11  Sonora, CA 95370 | |
| John and Sandee Watts | P.O. Box 1173, Twain Harte, CA 95383 | |
| Dr. and Mrs. Jeff Wittman | 10432 Hwy 49, Sonora, CA 95370 | |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| $1,310,328.00 | | | |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| | | |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

**INSURANCE COVERAGE**

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance?  ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?  ☐ Yes  ☒ No | 17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

None

19. Do you carry public liability and property damage insurance?  ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).  ☒ No

None

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid.  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A.  *Authority:*  The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose:*  The information requested is to be used in evaluating claims.
C.  *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond:*  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention:  Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**

1
2
3
4
5
6
7
8
9
10

**Exhibit "B"**

11

**(Letter Denied SF-95 & Issued Right to Sue)**

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORIGINAL COMPLAINT FOR DAMAGES



United States
Department of
Agriculture

Office of the
General
Counsel

Washington,
D.C.
20250-1400

June 30, 2022

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**      <u>7018036000143717930</u>

Eagle Meadows Road Property Owners Association
c/o Jeff Wittman
P.O. Box 1181
Soulsbyville, CA 95372

Subject: Administrative Tort Claim of Eagle Meadows Road Property Owners Association

Dear Mr. Wittman:

We carefully reviewed the materials that you submitted to the U.S. Forest Service of the U.S. Department of Agriculture, apparently relating to an intended claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* This submission by the Eagle Meadows Road Property Owners Association asserts that the U.S. Forest Service was grossly negligent by signing a Burned Area Emergency Response (BAER)/Rehabilitation plan without examining forest road 5N01 or consulting with you after the Donnell Fire, which you state occurred from August 1, 2018, to November 28, 2018.

After review, we have determined that Eagle Meadows Road Property Owners Association lacks standing under the FTCA to assert any such claim. As such, we find that you have not presented a claim under the FTCA to USDA.

In the alternative, if you have presented a claim to USDA or are deemed to have presented a claim, that claim is denied because our review of your claim discloses no liability on the part of the United States. The FTCA is a limited waiver of the sovereign immunity of the United States. *United States v. Orleans*, 425 U.S. 807, 813 (1976). As sovereign, the United States is immune from suit, except to the extent that it consents to be sued. The FTCA provides that the United States shall be liable for death, personal injury, or property damage under certain circumstances. 28 U.S.C. § 1436(b). The damage must be caused by the negligent or wrongful act or omission of a government employee acting within the scope of his or her employment. *Id.* Depending on the circumstances, the liability of the United States is governed by the state law of the place where the alleged act or omission occurred. *Id.* §§ 1436(b), 2674. Our review of your submission or, in the alternative, your deemed claim discloses no liability on the part of the United States.

This is the final action on your claim. If you are dissatisfied with this final action, you may file suit against the United States in an appropriate U.S. District Court not later than six (6) months from the date of mailing this letter, which is the date shown above.

Sincerely,

*Christopher S. Elmore*

Christopher S. Elmore
Acting Assistant General Counsel
General Law and Research Divisio

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit "C"**

**(Authorization Permit)**

Auth ID: **SUM1585**
Contact Name: **EAGLE MEADOW ROAD ASSOCIATION**
Expiration Date: **12/31/2024**
Use Code: 753

FS-2700-4b (v.09/12)
OMB No. 0596-0082

**U.S. DEPARTMENT OF AGRICULTURE**
**FOREST SERVICE**
**FOREST ROAD SPECIAL USE PERMIT**
**AUTHORITY:**
**FEDERAL LAND POLICY AND MGMT ACT, AS AMENDED October 21, 1976**

**EAGLE MEADOW ROAD PROPERTY OWNER'S ASSOCIATION** of C/O ROD MCNALLY, P. O. BOX 1181, SOULSBYVILLE,
**CA  95372** (hereafter called the holder) is hereby authorized to **USE** the following described National Forest Development Road within
the STANISLAUS NATIONAL FOREST for the following purposes:

Use and maintenance of National Forest Transportation System Road 5N01 (Eagle Meadow Road) as defined in the attached
Operation and Maintenance Plan, includes performance of road maintenance and snow removal as defined in Exhibit A, Road Use and
Maintenance Specifications.

Installation, use and maintenance of a gate (per Forest Service specification attached as Exhibit C and as described in the Operation
and Maintenance Plan under "Conditions for Access" to Highway 108) at the northern Highway 108 SNO-PARK.

The road covered by this permit is located in the County of Tuolumne, State of California, and is shown on the attached map and
identified as follows: National Forest Transportation System Road 5N01 (Eagle Meadow Road)from the junction with State Highway
108 in Sec. 31,T5N,R19E, to Northwest of Silver Mine Creek in Sec.15,T5N,R20E, a distance of approximately 14.5 miles, shown on
the attached map as Exhibit B.

This permit authorizes use of approximately 14.5 miles of road, approximately 24.60 acres.

Conditions imposed upon the access and use of Highway 108 are also defined in the annual Operation and Maintenance Plan attached
to and made part of this permit.

EMRPOA is authorized vehicular access beyond the Highway 108 winter closure gate via the gate located at the northern Highway 108
SNO-PARK for purposes of entering the closed portion of the roadway with their snow cats during winters of average snowfall while
adequate snow depth exists. During winters of average precipitation, EMRPOA accessing their properties via snowmobile will continue
to do so via the trailheads located at the SNO-PARK. Vehicular travel during drought and winters with below average precipitation is
only authorized for purposes of transporting snowmobiles to designated parking areas (Cascade Creek Road, Mill Creek Road, and
Eagle Meadow Road at a designated area) to continue via snowmobile to private property.

Vehicles travelling beyond the winter closure point must not, at any time, park within sight of the SNO-PARK. If the first approved
parking area is inaccessible, the vehicle should return to the SNO-PARK after off-loading snowmobiles. Vehicular travel (vehicle with
attached trailer) beyond the closure gate is only allowed when the highway road surface from the closure gate to the first designated
parking area (Cascade Creek Road) is free, clear of snow, and dry.

This permit does not authorize parking on Highway 108 nor is parking allowed anywhere on the highway beyond the winter closure
point. Approved parking areas are: Cascade Creek Road, Mill Creek Road, and Eagle Meadow Road.

No vehicular access is permitted between the winter closure point and Eagle Meadow Road once CAL-TRANS Sonora Pass road
opening procedures have begun.

California State Vehicle Code relating to the use and operation of motor vehicles applies to vehicle travel beyond the highway winter
closure point at all times.

EMRPOA will refrain from accessing and using the gate at Highway 108 SNO-PARK during peak visitation hours and days to be agreed
upon annually in the Operation and Maintenance Plan.

Any violation of the terms and conditions of this special use permit or annual Operation and Maintenance Plan will also result in
revocation of the transit privileges.

**This permit is made subject to the following terms, provisions, and conditions:**

1. This permit is subject to all existing easements and valid rights existing on this date.

2. Holder shall comply with applicable Federal or State law and shall comply with State standards for public health and safety,
environmental protection, and siting construction, operation, and maintenance if those standards are more stringent than applicable
Federal standards.

1

3. The holder shall cut no timber except as authorized by construction stipulations or maintenance agreements.

4. Holder shall pay the United States for all injury, loss, or damage, including fire suppression costs, in accordance with Federal and State laws and regulations.

5. Holder shall indemnify the United States for any and all injury, loss, or damage, including fire suppression costs the United States may suffer as a result of claims, demands, losses, or judgments caused by the holder's use or occupancy under this permit.

6. The annual fee for this use is waived in consideration of the contribution by the EAGLE MEADOW ROAD PROPERTY OWNER'S ASSOCIATION to the programs of the Forest Service through the grant of reciprocal rights-of-way and the performance of maintenance of the road as part of the forest development road system under the jurisdiction of the Forest Service.

7. Holder shall pay the Forest Service for its share of maintenance cost or perform maintenance, as determined by the Forest Service for all commercial use of the road. The maintenance obligation of the holder shall be proportionate to total use and commensurate with its use. Any maintenance to be performed by the holder shall be authorized by and shall be performed in accordance with an approved maintenance plan. In the event the road requires maintenance, restoration, or reconstruction work to accommodate the holder's needs, the Forest Service shall authorize the work required in the same manner as provided herein for maintenance or in clause 10 for reconstruction. The holder shall perform such work at its own expense.

8. The exercise of the use permitted shall be subordinate to any easement on said road subsequently granted by the United States to a public road agency for operation as a public highway.

9. Any construction or reconstruction of the road shall be in accordance with plans, specifications, and written stipulations approved by the Forest Service prior to beginning such construction or reconstruction.

10. The United States shall have unrestricted use of the road and right-of-way for all purposes deemed necessary or desirable in connection with the protection, administration, management, and utilization of Federal lands or resources, and it shall have the right alone to extend rights and privileges for use of the right-of-way and road thereon to States and local subdivisions thereof and to other users including members of the public, except users of land or resources owned or controlled by the holder. The Forest Service shall control such use to avoid unreasonable interference with use of the road by the holder.

11. The Forest Service may relocate the road to the extent necessary to accommodate the management needs of the National Forests.

12. This permit may be terminated or suspended upon breach of any of the conditions herein, or revoked at the discretion of the Regional Forester.

13. Unless sooner terminated in accordance with the provisions of the permit, or revoked by the Regional Forester, this permit shall expire and terminate on **12/31/2024**. Prior to expiration of this permit, the holder may apply for a new permit that would renew the use and occupancy authorized by this permit. Applications for a new permit must be submitted at least 6 months prior to expiration of this permit.

14. Nonexclusive Use and Public Access. Unless expressly provided for in additional terms, use of the permit area is not exclusive. The Forest Service reserves the right to use or allow others to use any part of the permit area, including roads, for any purpose, provided, such use does not materially interfere with the holder's authorized use. A final determination of conflicting uses is reserved to the Forest Service.

15. Forest Service Right of Entry and Inspection. The Forest Service has the right of unrestricted access of the permitted area or facility to ensure compliance with laws, regulations, and ordinances and the terms and condition of this permit.

16. Liability. For purposes of this section, "holder" includes the holder's heirs, assigns, agents, employees, and contractors.

    A. The holder assumes all risk of loss to the authorized improvements.

    B. The holder shall indemnify, defend, and hold the United States harmless for any violations incurred under any such laws and regulations or for judgments, claims, or demands assessed against the United States in connection with the holder's use or occupancy of the property. The holder's indemnification of the United States shall include any loss by personal injury, loss of life or damage to property in connection with the occupancy or use of the property during the term of this permit. Indemnification shall include, but is not limited to, the value of resources damaged or destroyed; the costs of restoration, cleanup, or other mitigation; fire suppression or other types of abatement costs; third party claims and judgments; and all administrative, interest, and other legal costs. This paragraph shall survive the termination or revocation of this authorization, regardless of cause.

    C. The holder has an affirmative duty to protect from damage the land, property, and interests of the United States.

D. In the event of any breach of the conditions of this authorization by the holder, the authorized officer may, on reasonable notice, cure the breach for the account at the expense of the holder. If the Forest Service at any time pays any sum of money or does any act which will require payment of money, or incurs any expense, including reasonable attorney's fees, in instituting, prosecuting, and/or defending any action or proceeding to enforce the United States rights hereunder, the sum or sums so paid by the United States, with all interests, costs and damages shall, at the election of the Forest Service, be deemed to be additional fees hereunder and shall be due from the holder to the Forest Service on the first day of the month following such election.

E. With respect to roads, the holder shall be proportionally liable for damages to all roads and trails of the United States open to public use caused by the holder's use to the same extent as provided above, except that liability shall not include reasonable and ordinary wear and tear.

F. The Forest Service has no duty to inspect the permit area or to warn of hazards and, if the Forest Service does inspect the permit area, it shall incur no additional duty or liability for identified or non-identified hazards. This covenant may be enforced by the United States in a court of competent jurisdiction.

17. Members of Congress. No Member of or Delegate to Congress or Resident Commissioner shall benefit from this permit either directly or indirectly, except when the authorized use provides a general benefit to a corporation.

18. Appeals and Remedies. Any discretionary decisions or determinations by the authorized officer are subject to the appeal regulations at 36 CFR 214, or revisions thereto.

19. Assignability. This authorization is not assignable or transferable. If Holder, through death, voluntary transfer, enforcement of contract, foreclosure, or other valid legal proceeding shall cease to be owner of the above described real property accessed by the authorized road, this authorization shall terminate.

20. Superior Clauses. In the event of any conflict between any of the preceding printed clauses or any provision thereof and any of the following clauses or any provision thereof, the preceding printed clauses shall control.

21. Operating Plan (C8). The holder shall provide an Operating Plan and revise the plan every year. The plan shall be prepared in consultation with the authorized officer or designated representative and cover operation and maintenance of facilities, dates or season of operations, and other information required by the authorized officer to manage and evaluate the occupation and/or use of National Forest System lands. The provisions of the Operating Plan and the annual revisions shall become a part of this authorization and shall be submitted by the holder and approved by the authorized officer or their designated representative(s). This Operating Plan is hereby made a part of the authorization.

In Witness Whereof, the parties hereto have caused this permit to be duly executed on this ____5th____ day of

__January, 2015__ .
MONTH/YEAR

Holder: EAGLE MEADOW ROAD ASSOCIATION

By: _Rod McNally_

ROD MCNALLY
PRESIDENT, EAGLE MEADOW ROAD ASSOCIATION

USDA -Forest Service

By: _____

JEANNE HIGGINS
FOREST SUPERVISOR

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0596-0082. The time required to complete this information collection is estimated to average one (1) hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at 202-720-2600 (voice and TDD).

To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, 1400 Independence Avenue, SW, Washington, DC 20250-9410 or call toll free (866) 632-9992 (voice). TDD users can contact USDA through local relay or the Federal relay at (800) 877-8339 (TDD) or (866) 377-8642 (relay voice). USDA is an equal opportunity provider and employer.

The Privacy Act of 1974 (5 U.S.C. 552a) and the Freedom of Information Act (5 U.S.C. 552) govern the confidentiality to be provided for information received by the Forest Service.

USDA FOREST SERVICE
STANISLAUS NATIONAL FOREST
SUMMIT RANGER DISTRICT

EAGLE MEADOW ROAD PROPERTY OWNERS ASSN
EXHIBIT A – ROAD MAINTENANCE SPECS

PERMIT HOLDER (holder) IS RESPONSIBLE FOR MAINTAINING ROAD SURFACE CONDITIONS TO MEET THEIR NEEDS. HOLDER IS ALSO RESPONSIBLE FOR REMOVING SNOW FROM ROADWAY FOR EARLY SEASON ACCESS. FOREST SERVICE ACCEPTS NO RESPONSIBILITY FOR MAINTAINING ROAD SURFACE IMPROVEMENTS FOR PUBLIC TRAFFIC. Forest Service maintains roads according to the designated road maintenance level, for public safety and protection of resources. The exercise of any of the privileges granted in this permit constitutes acceptance of all the conditions of the permit.

1. WORK REQUIRED TO ACCOMMODATE PERMITTED USE. in accordance with this use, the holder shall perform the described below and in accordance with plans and specifications attached hereto:

   COORDINATE WITH THE FOREST ROAD MANAGER ON SNOW REMOVAL GUIDELINES AND REQUIREMENTS, HEAVY MAINTENANCE NEEDS RELATED TO TREE AND BRUSH REMOVAL, DRAINAGE, STRUCTURES, AND ANY ROAD RECONSTRUCTION. KEEP CULVERTS AND DITCHES OPEN, FILL POTHOLES IN THE EXISTING CHIP SEAL SURFACE. FOREST SERVICE DESIGNATED (MARKED OR FLAGGED) TREES MAY BE REMOVED TO DAYLIGHT CORNERS FOR PUBLIC SAFETY.

2. USE PLANS. Prior to January 1st each year this permit is in effect, the holder shall notify the Forest Road Manager, in the form of a written operating plan, of the approximate time when such use will commence, the anticipated duration of such use, the names and addresses of holder's contractors or agents who will use the road on behalf of the holder, the estimated extent of use and such other information relative to holder's anticipated use, as the Forest Service may from time to time reasonably request. If and when during the year, there is any significant change with respect to the information supplied by the holder, the holder will notify the Forest Road Manager promptly in writing of such change. Plans and changes will be approved by the Forest Supervisor before use may commence.

3. RULES GOVERNING USE. The holder, its agents, employees, contractors, or employees of contractors, shall comply with all reasonable rules prescribed by the Forest Service, for control and safety in the use of this road and to avoid undue damage to the road. Such rules will include:

   a. Upon reasonable notice, closing the road or restricting its use when, due to weather conditions or the making of alterations or repairs, unrestricted use would in Forest Service judgment, cause excessive damage or create hazardous conditions;

   b. Upon reasonable notice, closing the road during periods when, in Forest Service judgment, there is extraordinary fire danger;

   c. Traffic controls, which in Forest Service judgment are required for safe and effective use of the road by authorized users thereof;

   d. Prohibition upon the loading of logs on trucks while such trucks are standing on the roadway surface, except to recover lost logs; and

   e. Prohibition of the operation on this road way of any vehicles or equipment having cleats or other tracks which will damage the surface thereof;

   f. Prohibition of the operation of log hauling vehicles.

   If holder acquires a special permit from the State and adds a sixth tag axle to a five axle truck, the following restrictions will apply: the weight limit can be increased to 88,000 lbs., provided that the length is extended to a minimum of 57 feet. This length is measured from the center of the front axle to the center of the last axle. The maximum length of ANY vehicle using Forest Development Roads is 75 feet in total length INCLUDING CARGO, unless a Forest Service permit authorizes additional length.

   g. Regulation of the number of vehicles so as to prevent undue congestion this road.

   h. The holder shall not use an "active ingredient" as defined in Section 2 of the Federal Insecticide, Fungicide, and Rodenticide Act, as amended (86 Stat. 973), in violation of said act on the land described in this permit.

4

USDA FOREST SERVICE                          EAGLE MEADOW ROAD PROPERTY OWNERS ASSN
STANISLAUS NATIONAL FOREST                   EXHIBIT A – ROAD MAINTENANCE SPECS
SUMMIT RANGER DISTRICT

4.  MAINTENANCE. Maintenance shall be performed in accordance with Forest Service specifications or requirements for maintenance as hereinafter listed, or as may be mutually agreed upon from time to time and shall consist of (1) current maintenance as necessary to preserve, repair, and protect the roadbed, surface and all structures and appurtenances, and (2) resurfacing equivalent in extent to the wear and loss of surfacing caused by operations authorized by this permit.

    a.  MAINTENANCE AND RESURFACING REQUIREMENTS AND SPECIFICATIONS.

        i.  HOLDER SHALL NOTIFY THE FOREST SERVICE THREE WORKING DAYS PRIOR TO CLOSURE FOR PURPOSES OF OILING FOR DUST ABATEMENT. HOLDER IS RESPONSIBLE FOR BARRICADING AND SIGNING ROAD DURING THE CLOSURE PERIOD.

        ii.  HOLDER SHALL BLOCK ALL LEAD OFF DITCHES AND DIPS TO PREVENT OIL FROM RUNNIG OFF ROAD SURFACE. HOLDER SHALL OPEN SAME FACILITIES AFTER OIL HAS CURED.

5.  SAFETY. Unless otherwise agreed in writing, when holder's operations are in progress adjacent to or on Forest Service controlled roads and trails open to public travel, holder shall provide the user with adequate warning of hazardous conditions associated with the holder's operation. A specific traffic control plan for each individual project shall be agreed to by the holder and Forest Service prior to commencing operations. Devices shall be appropriate to current conditions and shall be covered or removed when not needed. Except as otherwise agreed, flagger and devices shall be as specified in the "Manual on Uniform Traffic Control Devices for Street and Highways (MUTCD), and in specifications attached hereto.

6.  SNOW REMOVAL. Snow removal shall be done in a manner to preserve and protect the roads, to the extent necessary to ensure safe and efficient transportation of materials, and to prevent excessive erosion damage to roads, streams, and adjacent lands. Snow removal work by holder shall include:

    a.  Removal of snow from entire road surface width including turnouts.

    b.  Removal of snow slides, earth slides, fallen timber, and boulders that obstruct normal road surface width.

    c.  Removal of snow, ice, and debris from culverts so that the drainage system will function efficiently at all times.

    d.  All items of snow removal shall be done currently as necessary to ensure safe, efficient transportation. Work shall be done in accordance with the following minimum standards of performance:

        i.  Removal of Material. All debris, except snow and ice that is removed from the road surface and ditches shall be deposited away from stream channels at agreed locations.

        ii.  During snow removal operations, banks shall not be undercut nor shall gravel or other selected surface material be bladed off the roadway surface.

        iii.  Ditches and culverts shall be kept functional during and following roadway use.

        iv.  Snow berms shall not be left on the road surface. Berms left on the shoulder of the road shall be removed and/or drainage holes shall be opened and maintained. Drainage holes shall be spaced as required to obtain satisfactory surface drainage without discharge in erodible fills.

        v.  Dozers shall not be used to plow snow on system roads without prior written approval from the Forest Service.

        vi.  If possible, a minimum of two inches depth must be left on the road surface to protect the roadway.

        vii.  Holder's damage from or as a result of snow removal shall be restored in a timely manner.

7.  SNOW REMOVAL GUIDELINES.

Accomplishment of snow removal is to facilitate use without creating damage to the road facility. Truck mounted snow removal blades and rotary plows are specifically designed for the job. The use of alternate equipment requires special consideration according to the equipment type. The initial use of heavy equipment such as bulldozers for removing heavy accumulations should be limited to areas two feet or more above road surface or highest point on a structure, such as a guardrail. This provides a safety factor to prevent road damage.

The road surface is to be protected from damage by the use of adjustable skid "shoes" or other devices to prevent gouging the road surface on all blade operations. Loss of material from the surface of the road shall require replacement in kind. Any damage to structures will require repair.

Snow berms shall have openings to allow impounded melt water to drain off the road. Openings shall be placed to prevent a concentration of water from eroding slopes or soils.

Signing requirements and other pertinent requirements of MUTCD, OSHA, and State Laws shall be complied with on all plowing operations.

Snow removal operations will normally involve on-site direction and inspection by a qualified representative of the holder and/or by the Forest Service road management technician. When operations are to be recurrent, snow stakes shall be required. It is the responsibility of the holder to place the stakes, maintain and remove them when no longer needed, and to replace those stakes damaged or destroyed during operation.

8.  ROAD MAINTENANCE SPECIFICATIONS. The following specifications shall govern road maintenance made necessary by holder's road use and responsibilities for protecting roads from seasonal weather damage and for safeguarding soil and water:

    a.  Blading – Holder shall maintain cross section of dirt or graveled roads by blading and shaping surface and shoulders. Banks shall not be undercut. Established berms shall be maintained and additional berms shall be placed where needed to protect fills. Established berms which hold water unnecessarily shall be eliminated.

    b.  Rock and Oil Surface Repair – Holder shall correct corrugations, raveling, and surface breaks in asphalt surfaces, prior to holder's use. Where necessary in such corrective work, bituminous material of equivalent quality shall be used.

    c.  Surface Protection – While performing ordinary road maintenance work, holder shall avoid permanently fouling gravel or asphalt surfaces through covering them with earth or debris from side ditches, slides or other sources. Holder shall avoid blading surface course of road, if present.

    d.  Slide Disposal – In removing material from slides or other sources, holder shall deposit the material which must be moved to locations chosen with the objective that such material will not erode into streams, lakes, or reservoirs. Material shall not be wasted over planted road rills, unless otherwise agreed.

    e.  Visibility – Holder shall remove brush or tree growth or other obstruction to visibility as such obstruction develops during the permit period.

    f.  Normal Seasonal Clean-up – Holder shall perform a normal amount of seasonal weather clean-up which will include removing bank slough, minor slides, and fallen timber, replacing material washed out of fill slopes and cleaning out drainage ditches and culverts.

    g.  Drainage Maintenance – During periods of holder's operations, holder shall keep ditches, culverts, and other drainage facilities clear and functioning, unless otherwise agreed.

    h.  Preventative Maintenance – Holder shall perform preventative maintenance at end of holder's use each season to minimize weather damage during the non-use period. This may include cross-ditching, post-hauling, blading to remove ruts or other surface irregularities which would interfere with normal run-off of water, and cleaning of ditches and culverts. Damage resulting from holder's operations due to failure to perform required preventative maintenance shall be repaired by the holder at the holder's expense.

    i.  Dust Abatement – The holder shall, unless otherwise agreed, abate dust to promote the safe use of all roads, to prevent excessive loss of road material, and to minimize damage to adjacent resources. When any material other than water is used for dust abatement, such material must be approved by the Forest Service prior to use.



EXHIBIT C

| U.S. DEPARTMENT OF AGRICULTURE FOREST SERVICE R-5 PACIFIC SOUTHWEST REGION | Drawn / Designed / Reviewed / Approved | Revisions (NO. / DESCRIPTION / DATE / BY) | Forest: STANISLAUS; Project Name: GATES PROJECT | Sheet Title: ROAD CLOSURE DEVICES; Scale | Sheet 1 of 8 |
|---|---|---|---|---|---|

**Eagle Meadow Road Property Owner's Association**
**2015 Road Operating Plan**

**Statement of Purpose:** This 2015 Road Operating Plan is submitted to the *District Road Manager* pursuant to the terms and conditions of Forest Road Special Use Permit SUM1585, and limited use of State Highway 108 for purposes of accessing Forest Road 5N01 during its seasonal closure.

**Statement of Work:** For the calendar year 2015, the Eagle Meadow Road Property Owner's Association proposes to provide labor and equipment to open and maintain Eagle Meadow Road (5N01) located in the Stanislaus National Forest and passing through separate private property parcels. The work will include winter snow surface maintenance, spring snow removal, normal grading and road maintenance and some specific maintenance projects as approved by the United States Forest Service, Stanislaus National Forest Special Use Permit #SUM1585.

1. **Winter surface maintenance:** When snow conditions permit, the Association may use over the snow equipment while accessing the private property, to restore the snow on Eagle Meadow Road to a flat and consistent surface to provide reasonable, safe and enjoyable winter access to private property. Any grooming of the surface by the Association shall meet the standards established by the current winter trail grooming contract pertaining to the Eagle Meadow Road Trail.

2. **Early Opening Snow Removal:** When there is insufficient snow to accommodate legal snowmobile use, and the amount of snow accumulation left on the roadway can reasonably be removed, the Association will remove snow drifts on road 5N01 beginning at the closure gate located at the intersection of State Route 108 and Eagle Meadow Road. All snow removal operations on the surfaced portion of 5N01 will be performed by rubber tired or rubber tracked equipment in a manner that will not add to existing roadway surface damage. It is anticipated that snow removal operations will be accomplished on two separate occasions. The first operation will clear snow and snow drifts from State Route 108 to the top of Windy Ridge and the second, and later operation will remove snow and snow drifts on the remainder of the road as defined in the Special Use Permit.

3. **Normal Grading and Road Maintenance:** The Association will maintain Eagle Meadow Road, clean drainage ditches and culverts, fill holes and ruts, maintain existing water disbursement ditching, remove protruding rocks from the road surface and grade a passable surface. It is anticipated that this work will occur at numerous times during the spring, summer and fall as moisture and soil conditions allow. Pursuant to the terms of the Special Use Permit, the Association will notify the District Road Manager of the specific workdays.

4. The Association will remove debris that has been deposited from the embankment, around the gate at Highway 108 that has affected the operation of the gate. We will also attempt to reset the gate hinge post that has tilted, causing the gate to drag on the roadway surface when being opened.

5. The Association will provide equipment and labor to assist in removing the concrete "K" rails that have been placed to delineate the overflow parking area at Niagara Creek OHV Campground. We will also assist in replacing them with a natural barrier that the District determines would be more appropriate.

6. The Association will provide equipment and labor to install and maintain a gate at the north parking lot of the Highway 108 Sno-Park for the purpose of limited access to Highway 108 during drought years when over the snow vehicle use from the Sno-Park is not practical. Access to Highway 108 during its normal seasonal closure is subject to the following conditions:

Vehicular traffic (pickup trucks, cars, trailers,) beyond the closure gate will only be allowed when the highway at the closure gate is free of snow and dry.

Caltrans will be held harmless for any and all damages to either state or personal property and also be held harmless for any injuries incurred beyond the closure gate.  This includes vandalism on vehicles parked beyond the closure gate.

Property owners will be held responsible for any damages to the highway, shoulders, drainage systems or any other state assets which may become damaged from Association use.

No parking on the highway beyond the closure gate will be allowed.

Approved off the highway parking areas will be approved and designated by Caltrans.

Caltrans will not be held responsible for vehicles that are snowed in.

Vehicles traveling beyond the closure gate will not park within site of the snow park.

If any vehicle cannot travel to the first approved parking area they will be required to unload their snowmobile and return their vehicle to the snow park area.

During normal winters once Pass Opening has begun, no private traffic will be permitted between the closure gate and the Eagle Meadows Road, as Caltrans will make every effort to open this section of roadway first.

During years and various times of light precipitation when the roadway can be easily traveled all the way to Eagle Meadows Road, property owners will park off the highway out of site on the Eagle Meadows Road.

All State and Federal laws and regulations for the operation of vehicles and recreational vehicles will apply at all times.

Property owners will refrain from using the gate at the snow park during peak snow park days and hours.

Violation of the terms and conditions set forward in the "Letter of Agreement" will result in a revocation of the transit privileges for the property owners.

Given an average snow year snowmobiles will continue to access the state highway via the trailheads located at the snow parks.

2015

This is the Operating Plan for ~~2014~~ from the Eagle Meadow Road Property Owner's Association. All work will be done in conformance to the terms and conditions of the Special Use Permit or at the direction of the District Road Manager should the Permit not address the specific work.

It is anticipated that work will begin on initial snow removal by early May, 2015 on a date agreed to by the District Road Manager. Work will continue throughout the year as weather conditions, soil conditions, and Association labor availability allow. Association does not anticipate using any contractor for the performance of the work covered in this Operating Plan, nor does the Association anticipate naming any third party as its agent for the work.  Association members will do all work in accordance to the terms and conditions of the Special Use Permit.

If there are any questions, please contact Rod McNally, President, Eagle Meadow Road Property Owner's Association at 209.533.0674.


Respectfully,


Rod McNally

1

2

3

4

5

6

7

8

9

10

**Exhibit "D"**

11

**(Photographs of the Damaged Highway)**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

















Case 1:22-cv-01657-JLT-BAM   Document 1   Filed 12/30/22   Page 33 of 85



























































































1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit "E"**

**(Proposal)**



MODESTO OFFICE:
P.O. BOX 4760, MODESTO, CA 95352
TELEPHONE: (209) 523-0734
ESTIMATING FAX: (209) 523-4927
ACCOUNTING FAX: (209) 523-4313

OFFICE AND YARD:
140 EMPIRE AVENUE
MODESTO, CALIFORNIA 95354
1-877-823-2305
WWW.GEORGEREED.COM

State Contractor's License No. 211337-A



January 10, 2019

**PROPOSAL**

**Eagle Meadow Road Property Owners Association**                    Bid No. 18-332
Attn: Stacy Dodge, Glenn & Bonnie Kolpack
sierrass@mlode.com
glennand bonnie@gmail.com

**SUBJECT**:   Eagle Meadow Road Rehabilitation Proposal

George Reed, Inc. hereby respectfully submits our proposal for various roadway improvements to Eagle Meadow Road in the Stanislaus National Forest as follows:

| Item Description – EAGLE MEADOW ROAD | Quantity/Unit | | Unit Price | Total Price |
|---|---|---|---|---|
| **1.0** **Highway 108 to Barn Meadow** **Pavement Repairs** | 1 | LS | | $75,600.00 |
| **1.1.1** **Highway 108 to Niagara Rim** **- Single Chip Seal** | 483,200 | SF | | $285,088.00 |
| **1.2** **Highway 108 to Niagara Rim** **- Double Chip Seal** | 483,200 | SF | | $381,728.00 |
| **2.0** **Barn Meadow Base Section** **- Grade Prep & Prime Coat** | 1 | LS | | $6,000.00 |
| **2.1** **Barn Meadow Base Section** **- Single Chip Seal** | 14,000 | SF | | $39,200.00 |
| **2.2** **Barn Meadow Base Section** **- Double Chip Seal** | 14,000 | SF | | $48,300.00 |
| **3.0** **Niagara Rim to EMRPOA Property** **- Roadway Grading** | 1 | LS | | $46,000.00 |
| **3.1** **Niagara Rim to EMRPOA Property** **- Place 2.5" Aggregate Base** | 3,300 | TON | | $227,000.00 |
| **3.2** **Niagara Rim to EMRPOA Property** **- Prime Coat** | 1 | LS | | $46,000.00 |
| **3.3** **Niagara Rim to EMRPOA Property** **- Single Chip Seal** | 222,800 | SF | | $178,300.00 |
| **3.4** **Niagara Rim to EMPORA Property** **- Double Chip Seal** | 222,800 | SF | | $211,700.00 |

| | | | | |
|---|---|---|---|---|
| 4.0 | EMRPOA Property Roadway | | | |
| | - Roadway Grading | 1 | LS | $23,000.00 |
| 4.1 | EMPORA Property Roadway | | | |
| | - Place 2.5" Aggregate Base | 900 | TON | $67,500.00 |
| 4.2 | EMRPOA Property Roadway | | | |
| | - Prime Coat | 1 | LS | $16,000.00 |
| 4.3 | EMRPOA Property Roadway | | | |
| | - Single Chip Seal | 63,000 | SF | $50,400.00 |
| 4.4 | EMRPOA Property Roadway | | | |
| | - Double Chip Seal | 63,000 | SF | $63,000.00 |
| 4.6 | EMRPOA Property Roadway | | | |
| | - Place 2.5" Hot Mix Asphalt | 1,000 | TON | $160,000.00 |
| 5.0 | Culvert Crossing | | | |
| | - 12" Dia. X 20' Length | 1 | EA | $1,500.00 |

---

**Conditions and Clarifications**

1) George Reed's quotation is based on discussions at an on-site meeting with Glenn and Bonnie Kolpack and an office meeting with the Kolpack's and Stacy Dodge and Mike Gourley, George Reed's Estimator, in December 2018.

2) Our quotation for Item **1.0, Highway 108 to Barn Meadow – Pavement Repairs,** includes all labor, equipment and materials necessary to remove failed pavement @ approximately 25 locations @ 2 ½" depth and place 2 ½" compacted thickness Hot Mix Asphalt (HMA). Additionally clean and apply an asphalt emulsion tack coat to the existing paved/oiled roadway surface @ approximately 25 locations and place variable thickness HMA as needed to level existing roadway depressions and fatigued areas.
Approximately 200 tons of HMA will be placed on +/- 5 miles of roadway.

3) Our quotation for Item **1.1, Single Chip Seal,** includes all labor, equipment and materials necessary to place a Single Chip Seal per Caltrans specifications on the existing roadway from Hwy 108 to Niagara Rim, +/- 5.90 miles of roadway

4) Our quotation for Item **1.2, Double Chip Seal,** includes all labor, equipment and materials necessary to place a Double Chip Seal per Caltrans specifications on the existing roadway as described in Item 1.1.

5) Our quotation for Item **2.0, Barn Meadow Base Section – Grade Prep & Prime Coat,** includes all labor, equipment and materials necessary to regrade the existing base roadway as needed for shape and drainage prior to an application of a SC 250 Prime Coat @ 0.50 gallon per square yard.

6)   Our quotation for Item **2.1, Barn Meadow Base Section – Single Chip Seal,** includes all labor, equipment and materials necessary to place a Single Chip Seal per Caltrans specifications on the prepared roadway from the end of the existing pavement @ Barn Meadow +/- 1,000 ' East to the existing pavement.

7)   Our quotation for Item **2.2, Barn Meadow Base Section- Double Chip Seal,** includes all labor, equipment and materials necessary to place a Double Chip Seal per Caltrans specifications on the existing roadway as described in Item 2.1.

8)   Our quotation for Item **3.0, Niagara Rim to EMRPOA Property – Roadway Grading,** includes all labor, equipment and materials necessary to regrade the existing dirt roadway, pull roadside ditches, reshape as required to provide for uniform shape and drainage. The roadway is +/- 2.70 miles long and varies from 12' to 16' in width.

9)   Our quotation for Item **3.1, Niagara Rim to EMRPOA Property – Place 2.5" Aggregate Base,** includes all labor, equipment and materials necessary to place and compact 2.5" of Class II Aggregate Base on the prepared roadway as described in Item 3.0.

10)  Our quotation for Item **3.2, Niagara Rim to EMRPOA Property – Prime Coat,** includes all labor, equipment and materials necessary to apply SC 250 Prime Coat @ 0.50 gallon per square yard.

11)  Our quotation for Item **3.3, Niagara Rim to EMRPOA Property – Single Chip Seal,** includes all labor, equipment and materials necessary to place a Single Chip Seal per Caltrans specifications on the prepared roadway as described in Item 3.0.

12)  Our quotation for Item **3.4, Niagara Rim to EMRPOA Property – Double Chip Seal,** includes all labor, equipment and materials necessary to place a Double Chip Seal per Caltrans specifications on the prepared roadway as described in Item 3.0.

13)  Our quotation for Item **4.0, EMPOA Property Roadway - Roadway Grading, includes** all labor, equipment and materials necessary to regrade the existing dirt roadway, pull roadside ditches, reshape as required to provide for uniform shape and drainage. The roadway is +/- 0.85 miles long and varies from 12' to 14' in width.

14)  Our quotation for Item **4.1, EMRPOA Property Roadway – Place 2.5" Aggregate Base,** includes all labor, equipment and materials necessary to place and compact 2.5" of Class II Aggregate Base on the prepared roadway as described in Item 4.0.

15)  Our quotation for Item **4.2, EMRPOA Property Roadway - Prime Coat,** includes all labor, equipment and materials necessary to apply SC 250 Prime Coat @ 0.50 gallon per square yard on the prepared base grade as described in Item 4.0.

16) Our quotation for Item **4.3, EMRPOA Property Roadway – Single Chip Seal,** includes all labor, equipment and materials necessary to place a Single Chip Seal per Caltrans specifications on the prepared roadway as described in Item 4.0.

17) Our quotation for Item **4.4, EMRPOA Property Roadway – Double Chip Seal,** includes all labor, equipment and materials necessary to place a Single Chip Seal per Caltrans specifications on the prepared roadway as described in Item 4.0.

18) Our quotation for Item **4.5, EMRPOA Property Roadway – Place 2.5" Hot Mix Asphalt,** includes all labor, equipment and materials necessary to place 2.5" compacted thickness HMA on the prepared aggregate base grade. Approximately 1,000 ton of ¾" HMA will be placed per Caltrans specifications.

19) Our quotation for Item **5.0, Culvert Crossing – 12" Dia. X 20' Length,** includes all labor, equipment and materials necessary to place one culvert crossing as needed at various location as agreed.

20) This proposal provides for one mobilization for all items of work and is contingent upon continuous, uninterrupted operation barring unforeseen circumstances (e.g., inclement weather) beyond the control of Owner, General Contractor, or George Reed, Inc.

21) George Reed, Inc. will not be held responsible for delays due to:  temperature,    weather, inspections, surveying, utility installation, the Owner's or General Contractor's operations.

22) This proposal is based on having clear access to all work areas. This will include a clear and unobstructed area to maneuver trucks for the supply of construction materials.

23) The prices shown on our proposal are good through September 30, 2019.

24) Owner/General Contractor to notify George Reed, Inc. at least 15 working days in advance of requested start date for proposed work.

25) Attached "General Provisions" are included in this proposal and are to be included in any subsequent subcontract.

26) The following items have been **underlined**excluded** from this proposal:
    a) lines, grades, engineering, or staking, permits or permit fees
    b) inspection, testing and all items related to Quality Control/Quality Assurance (QCQA)
    c) Storm Water Pollution Prevention Plan and associated costs within this project
    d) erosion control, installation of and or maintenance to any Best Management Practices installations that may be required,
    e) adjustment, relocation, protection and/or removal of existing utilities, utility covers, boxes, valve covers, trees, structures, etc.
    f) removal of hazardous and/or unsuitable materials from culvert pipes or drainage structures repair or maintenance thereof

g) import and/or export of any materials not specifically included by this proposal
h) as-built drawings and related documents
i) all items or reports related to spill prevention and response programs
j) posting's and public notifications
k) dike backfill or shoulder backing

Please call me at (209) 523-0734 or (209) 747-0025 with any questions regarding this proposal.

Respectfully,

GEORGE REED, INC.                                   **ACCEPTED**:   OWNER'S REPRESENTATIVE

*Michael Gourley*

Project Manager/Estimator                           DATE: _____


                                                    _____
                                                    SIGNATURE


                                                    _____
                                                    PRINT NAME AND TITLE

**GENERAL PROVISIONS**

1. Contractors are required by law to be licensed and regulated by the Contractors State License Board. Any questions concerning a contractor may be referred to the Registrar of the Board, whose address is: Contractors State License Board, P. O. Box 26000, Sacramento, CA 95826.

2. Performance and/or delivery shall commence not later than specified on the front page. In the event of delays caused by Purchaser beyond that date, cost increases (if any) shall be charged to Purchaser's account.

3. Contractor shall not be liable for failure of performance or failure or delay in delivery by reason of any contingency beyond Contractor's reasonable control.

4. Unless expressly agreed in writing, Contractor shall not be responsible for the operation and results of any technical advice in connection with the design, installation or use of the product sold hereunder.

5. No promises, agreements or understandings have been made other than contained herein. No agent has any authority to obligate Contractor to any terms or conditions not herein expressed unless approved in writing.

6. All payments are to be made by Purchaser to Contractor's address shown on the front page. Accounts are due and payable in accordance with the terms shown on the front page. When applicable, contractor will submit progress pay estimates for work completed at the end of each month, and Purchaser will pay 90% of the invoice amount due within ten (10) days after receipt of such billing. The amounts so paid shall be deducted from the final billing after completion of all work.

7. The bases for payment are:

   a) Lump Sum Contract: The contract amount, plus or minus any changes mutually agreed upon in writing.
   b) Item Price Contract: Calculated quantities based on measurements of completed work in place or substantiated by load (weight) tags and/or scale sheets for materials delivered and incorporated into the work, multiplied by the applicable item Prices.

8. The Finance Charge on past due accounts is a fixed amount of 1.5% per month on the principal balance due, which is equal to an annual percentage rate of 18%. In the event of nonpayment of a past due account, the entire amount of both principal and interest accrued at such time shall become due, payable and collectible without notice at the option of Contractor. Purchaser agrees to pay reasonable attorney's fees incurred, with or without legal action, as well as any court costs incurred in collecting the past due account.

9. Failure of Contractor to enforce any of these conditions or to exercise any right shall in no way affect such rights, and no such failure shall be construed as a waiver in respect to other or future occurrences.

EMPROA V. USDA FOREST SERVICE
EASTERN DISTRICT COURT
Case No.

### **PROOF OF SERVICE**

I am resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 4317 North Star Way, Suite B, Modesto CA 95356

On the date set forth below, I served the following document(s) described as:

ORIGINAL COMPLAINT FOR DAMAGES

On the interested parties in this action by placing true copies thereof enclosed in sealed envelopes and/or packages addressed as follows:

USDA FOREST SERVICE
ALBUQUERQUE SERVICE CENTER
ATTN: CLAIMS
101 B SUN AVENUE NE
ALBUQUERQUE, NM 87109

OFFICE OF THE GENERAL COUNSEL
33 NEW MONTGOMERY STREET, 17TH FLOOR
SAN FRANCISCO CA 94105

UNITED STATED DEPARTMENT OF AGRICULTURE
OFFICE OF GENERAL COUNSEL
DC MAIN OFFICE
1400 INDEPENDENCE AVE SW
WASHINGTON, DC 20250

☐ **(MAIL)** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Modesto CA, California.

☐ (**E-MAIL or ELECTRONIC TRANSMISSION**) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed, I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on 12/30/2022, at Modesto, CA, Stanislaus County, California.

_____
Kayla Brown

